UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

JOEL MESTER,

          Plaintiff,                            Case No.  1:15-CV-0573

v.

                                        HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant,

———————————————————/

## OPINION

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Joel Mester seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

      The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.

*See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 37 years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.34, 63.)  He completed three years of college, and was previously employed as a warehouse worker, sales person, and construction worker.  (PageID.64, 92–96.)  Plaintiff applied for DIB on June 14, 2012 and SSI on June 22, 2012, alleging that he had been disabled since May 9, 2012, due to oral cancer, avascular necrosis of the hip, Crohn's Disease, and resulting complications

2

from the above.  (PageID.113, 210–16.)  Plaintiff's applications were denied on October 30, 2012,

after which time he requested a hearing before an ALJ.  (PageID.142–52.)  On December 4, 2012,

Plaintiff appeared with his counsel before ALJ Carol Guyton for an administrative hearing with

testimony being offered by Plaintiff and a vocational expert (VE).  (PageID.54–108.)  In a written

decision dated January 13, 2014, the ALJ determined that Plaintiff was not disabled.

(PageID.34–53.)  On April 24, 2015, the Appeals Council declined to review the ALJ's decision,

making it the Commissioner's final decision in the matter.  (PageID.27–32.)  Plaintiff subsequently

initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R.

---

[1]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

§§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).   *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).   At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."   *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation.   At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 9, 2012, the alleged onset date.   (PageID.39.)   At step two, the ALJ determined Plaintiff had the following severe impairments: (1) ulcerative colitis; (2) Crohn's disease; (3) status post carcinoma of tongue; (4) avascular necrosis; (5) major depressive disorder; and (6) generalized anxiety disorder. (PageID.40.)   At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.40–42.)   At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).   The claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently.   In an 8-hour workday, the claimant can stand/walk for 6 hours and sit for 6 hours.   The claimant can occasionally climb of ramps and stairs, stoop, kneel, crouch and crawl.   He can never climb ladders, ropes or scaffolds.   He can frequently balance.   He is limited to simple routine tasks involving no more than simple short instructions and simple work-related decisions with few workplace changes.   He is limited to work which requires

4

no contact with the general public and allows close proximity to a
bathroom.

(PageID.42.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (PageID.46.)  At the fifth step, the ALJ questioned the VE to

determine whether a significant number of jobs exist in the economy which Plaintiff could perform

given his limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that there existed

approximately 36,000 jobs in the state of Michigan and 750,000 jobs in the nation that an individual

similar to Plaintiff could perform.  (PageID.47.)  The VE specifically identified the positions of

shipping and receiving weigher, assembler, and inspector as those positions Plaintiff could perform.

(PageID.96–98.)  This represents a significant number of jobs.  *See Hall v. Bowen*, 837 F.2d 272,

274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir.

1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from

May 9, 2012, through January 13, 2014.  (PageID.48.)

## DISCUSSION

Plaintiff's Statement of Errors presents the following claims:

1.     The ALJ erred by failing to find Mr. Mester disabled at step three of the
       sequential evaluation; and

2.     The ALJ erred by failing to properly assess and incorporate the opinion of
       Mr. Mester's treating physician.

(PageID.726.)  The Court will discuss the issues below.

**1.**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1,

identifies various impairments which, if present to the severity detailed therein, result in a finding

that the claimant is disabled.  Section 5.06 provides, in relevant part:

> 5.06    *Inflammatory bowel disease (IBD)* documented by endoscopy,
> biopsy, appropriate medically acceptable imaging, or
> operative findings with:
>
> . . .
>
> B.    Two of the following despite continuing treatment as
> prescribed and occurring within the same consecutive
> 6-month period:
>
> . . .
>
> 3.    Clinically documented tender abdominal mass
> palpable on physical examination with
> abdominal pain or cramping that is not
> completely controlled by prescribed narcotic
> medication, present on at least two evaluations
> at least 60 days apart; or
>
> . . .
>
> 5.    Involuntary weight loss of at least 10 percent
> from baseline, as computed in pounds,
> kilograms, or BMI, present on at least two
> evaluations at least 60 days apart[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.06.  The ALJ determined Plaintiff did not meet the

requirements of the listing:

> [T]he first part of the listing requires that the two measurements occur
> within the same consecutive six-month period and are documented by
> appropriate medically acceptable imaging or operative findings.
> Here, the records cited by the claimant's representative encompass
> dates ranging from 2009 to 2012 and thus do not reference the same
> six month period.  Furthermore, diagnostic imaging results were

negative for active inflammatory findings.  Accordingly, the claimant does not meet listing 5.06.

(PageID.40–41.)  Plaintiff at least tacitly concedes he does not technically satisfy the requirements of the listing, and his briefing does not argue the contrary.

Plaintiff argues, however, that even though he does not meet the requirements themselves, his condition is equivalent to the listing.  A claimant can demonstrate medical equivalence to a listing in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Koepp v. Astrue*, No. 10–C–1002, 2011 WL 3021466, at \*10 (E.D.Wis. July 22, 2011) (citing 20 C.F.R. § 404.1526(b)); *see also* 20 C.F.R. § 416.926.  At the hearing, and in this appeal, Plaintiff argues his impairment should be found to equal Listing 5.06 based on the first alternative. (PageID.62.)

It is Plaintiff's burden at step three of the sequential analysis to establish that he meets or equals the requirements of Listing 5.06.  Plaintiff must prove "'medical findings equal in severity to *all* the criteria for the listed impairment.'"  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original)).  It was not the ALJ's

7

burden. *See Lusk v. Commissioner*, 106 F. App'x 405, 411 (6th Cir. 2004) (Plaintiff "must present specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to a listed impairment."); *Shinaver v. Comm'r of Soc. Sec.*, No. 1:14–cv–727, 2015 WL 4644482, at * 2 (W.D. Mich. Aug. 4, 2015) (Plaintiff "bore the burden of providing medical evidence to support his equivalency argument.").

        As noted above, the ALJ determined Plaintiff did not meet the criteria of 5.06B because the required conditions did not occur within the same consecutive six-month period.[2] Plaintiff does not refute this point.  Instead, Plaintiff argues that he meets the criteria of both B(3) and B(5), albeit not within the same consecutive six-month period, and that this should amount to medical equivalence.  Plaintiff cites to several records relating to B(3), which requires evidence regarding abdominal pain and tenderness.  As Plaintiff notes, there are only two treatment notes that fit within any six month period, those dated April 8, 2011 and August 12, 2011.  (PageID.735.) Accordingly, the six month window began on April 8, 2011 and closed in October 2011.  Both parties agree this is the relevant time frame.  Yet the evidence of weight loss necessary to satisfy B(5) does not fall within the window.  Plaintiff provides two date ranges.  The first, between August 12, 2011 and February 27, 2012, overlap with the critical range for a period of two months, but exceed the window by four months.  Moreover, they exceed a six-month period by fifteen days.  The second range, dated between December 5, 2011, and February 27, 2012, are entirely outside the critical time

_____

        [2]It also appears the ALJ questioned whether Plaintiff satisfied the initial requirement of documentation of his IBD.  The ALJ noted that it did not appear his disease was currently active. (PageID.694–95, 703.)  It is unclear whether a claimant must have an active case of IBD in order to satisfy the listing, and neither party provides argument on this point.  The Court need not further consider the point, however, as even if Plaintiff satisfies this initial requirement, he fails elsewhere.

range for the B(3) criteria.  (PageID.736.)  Accordingly, Plaintiff has not, and cannot, meet the listing's requirement that two of the criteria occur in the same consecutive six-month period.

In his initial brief, Plaintiff leaves the argument there, and makes no argument as to why his impairment should be found equivalent to the listing, even though he concedes the evidence relating to B(3) and B(5) do not occur within the same consecutive six-month window. (PageID.736.)  It is not until his reply brief where Plaintiff attempts to argue that his impairment should be found equal to Listing 5.06 because his weight loss of sixteen percent between December 5, 2011 and February 27, 2012, is over and above the ten percent requirement of B(5), and should make up for the failure of the B(3) and B(5) criteria to be present in the same consecutive six-month period.[3]  (PageID. 761.)  The Court disagrees.  As the ALJ noted, Plaintiff has not presented an opinion from a physician opining that his impairments equal Listing 5.06, nor has he presented "other findings" that are of "equal medical significance to the required criteria."  20 C.F.R. § 404.1526(b)(1)(ii).  Rather Plaintiff seeks to rewrite the listing to provide for a sliding scale: easily meeting one criteria (weight loss) allows the claimant to "bank" credit against a shortfall elsewhere. But Plaintiff has presented no medical evidence to show how his weight loss, as extreme as it might be, is equivalent to the requirement that the weight loss occur in the same consecutive six-month period as one of the other criteria in 5.06B.  Medical equivalence is Plaintiff's burden:

> Medical equivalence is not a means by which a claimant may be found disabled simply by getting close to meeting a Listing; meeting 5 out of 6 criteria does not suddenly become good enough to find a claimant disabled. When a claimant fails to meet all the criteria of a

---

[3]As the Commissioner points out, it is unclear whether Plaintiff's weight loss is as extreme as alleged, as it is not clear that the starting weight Plaintiff claims was in fact his base line weight. The Court need not decide this point, however, as even if Plaintiff separately satisfies two of the criteria, he has not established that his impairments equal all the requirements of the listing.

> Listing, that gap cannot just be ignored. Instead, the claimant must
> point to something to fill that gap, whether it is some other finding
> of equal medical significance, or a combination of impairments.

*Cueller v. Astrue*, No. 10-C-619, 2011 WL 1743841, at *5 (E.D. Wis. May 5, 2011). Plaintiff has

not "filled the gap" here. Accordingly, Plaintiff has not satisfied his burden of demonstrating his

impairment is equivalent to Listing 5.06B.

        In his reply brief, Plaintiff argues for the first time that the ALJ was required to obtain

an updated medical opinion from an expert regarding whether he equaled the listing. (PageID.761.)

The argument is deemed waived, however, because it was made for the first time in Plaintiff's reply

brief. Raising a new argument in his reply brief is improper, and constitutes a violation of the

Court's order directing the filing of briefs. (PageID.721.) It is well established that a reply brief is

not the proper place to raise new arguments. *See e.g., Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir.

2010); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Even if Plaintiff had not

waived the issue, his argument would have failed. The ruling cited by Plaintiff provides an ALJ with

the discretion to seek out an updated medical opinion by noting that an ALJ should receive an

updated expert opinion only if in her opinion the "symptoms, signs, and laboratory findings reported

in the case record suggest that a judgment of equivalence may be reasonable." SSR 96-6p, 1996 WL

374180, at *4 (July 2, 1996). There is nothing in the record that suggests a judgment of equivalence

may be reasonable here. As noted above, Plaintiff has presented no "other findings" that are equal

in severity to all of the required criteria. The ALJ was thus not required to seek out an updated

medical opinion. The burden at step three is on the claimant who failed to fill the evidentiary gap

of medical equivalence. For all the above reasons, Plaintiff's claim fails.

**2.**

On November 5, 2013, Dr. Cindy Schuler, M.D., gave a statement regarding Plaintiff's impairments.  (PageID.683–86.)  Noting that Plaintiff had been diagnosed with Crohn's disease, panic disorder, osteonecrosis of the right hip, and had a history of tongue cancer, Dr. Schuler opined that the "combination of medical conditions certainly could be disabling" for Plaintiff.  (PageID.683–84.)  When asked whether Plaintiff could be expected to miss work, Dr. Schuler opined that "I do think that could happen" due to Plaintiff's Crohn's disease and anxiety, and that this might amount to several days in a week or a month.  (PageID.684–85.)  She further opined that Plaintiff "may" need to take unscheduled breaks, would need consistent and immediate access to a restroom, and that it would be "difficult" for Plaintiff to perform full-time competitive work.  (PageID.685.)  The ALJ assigned the opinion only "little weight" as

> Dr. Schuler's opinion is primarily based on speculation, as she reported that "if [the claimant's] Crohn's or anxiety were flaring up" then the claimant "could miss several days of work in a week or a month."  She also reported that the claimant may require unscheduled breaks throughout the day, and that it would be difficult for the claimant to perform full time work going forward.  However, as indicated above, treatment records do not indicate active Crohn's disease.  Further, even in spite of the claimant's anxiety and digestive issues, the claimant testified he is able to work (currently 40 hours per week, but previously between 20 and 22 hours per week), attend church, and shop for groceries, activities which are inconsistent with the aforementioned work preclusive limitations.

(PageID.45.) (internal citations omitted).  Plaintiff claims that in this, the ALJ failed to provide "good reasons" for giving less than controlling weight to the opinion.  (PageID.737–40.)  The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical

11

condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).  It appears undisputed that Dr. Schuler qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers*, 839 F.2d at 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is,

without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376–77.

Plaintiff claims that it was a "mischaracterization" for the ALJ to state that Dr. Schuler's opinion was speculative.  (PageID.739.)  Rather, noting that Crohn's disease has periods of remission and as well as periods of activity, Plaintiff claims Dr. Schuler was merely stating that when Plaintiff's Crohn's disease is active, he will miss work.  (PageID.739.)  In *Sharp v. Barnhart*, 152 F. App'x 503 (6th Cir. 2005), the court considered a doctor's opinion that the plaintiff had a severe case of vertigo approximately ten times a month, that it would be best for Plaintiff to go to bed when this occurred, and that the plaintiff would consequently miss ten days of work each month.  *Id.* at 509.  The court found this to be an opinion regarding the "frequency and duration of the disease's exacerbations."  *Id.*  Dr. Schuler did not offer such an opinion here.  She offered no opinion regarding how often Plaintiff would experience flare ups due to his Crohn's disease.  (PageID.683–86.)  The ALJ noted that based on the record at the time, Plaintiff's Crohn's was not active.  (PageID.45.)  But even if Plaintiff's Crohn's was active, Dr. Schuler offered no definitive opinion regarding Plaintiff's limitations.  Instead Dr. Schuler merely stated that Plaintiff "could"–not that he would need to–miss work if his Crohn's was flaring up.   (PageID.685.)  Accordingly substantial evidence supports this reason for discounting Dr. Schuler's opinion.

Dr. Schuler also opined that Plaintiff's anxiety "could" cause Plaintiff to miss several days of work each month.  (PageID.685.)  The ALJ noted this was inconsistent with Plaintiff's testimony that he was currently working close to forty hours a week and was able to attend church. (PageID.70–74.)  Plaintiff argues that the ability to engage in part-time work is not indicative of an ability to engage in full-time work, and that in any event, his employer made accommodations.

(PageID.740.)  That may be so, however that is not what the ALJ did here.  Rather in this instance, the ALJ noted that Plaintiff's work history, in combination with his other activities, was inconsistent with the doctor's opinion that Plaintiff's social anxiety might cause him to miss work.  (PageID.45.) While Plaintiff undoubtedly experiences anxiety, such is adequately accounted for in his RFC limiting him from contact with the general public.  (PageID.44–45.)  In sum, the ALJ provided good reasons, supported by substantial evidence, for discounting the doctor's opinion.   Plaintiff's argument is thus rejected.

### CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:      May 24, 2016            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE